HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ENCOMPASS INDEMNITY COMPANY,<br>Plaintiff,<br>v.<br>DANIEL NIEDER and VICTORIA ANNA JOY JAGUAR,<br>Defendants. | CASE NO. 2:25-cv-00679-RAJ<br>ORDER |

## I. INTRODUCTION

THIS MATTER comes before the Court on Plaintiff Encompass Indemnity Company's Motion for Summary Judgment, Dkt. No. 30 ("Motion"). The Court has reviewed the Motion, the submissions in support of and in opposition to the Motion, and the balance of the record. Plaintiff requested oral argument, but the Court finds oral argument is not necessary to resolve the Motion. For the reasons set forth below, the Court **GRANTS** the Motion.

## II. BACKGROUND[1]

Plaintiff Encompass Indemnity Company ("Encompass") is an insurance company based in Illinois. Dkt. No. 1 ¶ 2.1. Defendants Daniel Nieder and Victoria Anna Joy Jaguar were the named insureds under a homeowners insurance policy issued by Encompass, which was in effect from April 15, 2021, to April 15, 2022 (the "Policy"). *Id.* ¶ 5.1; Dkt. No. 32-1 at 8. The Policy was "renewed for a consecutive policy period" through April 15, 2023. Dkt. No. 32-2 at 3.[2] The Policy includes a personal umbrella coverage endorsement (the "Umbrella Policy"). Dkt. No. 32-1 at 88–98.

### A. The Underlying Lawsuit

On December 6, 2024, Ms. Jaguar filed suit against Mr. Nieder in King County Superior Court. Dkt. No. 31-1; *see Jaguar v. Nieder*, No. 24-2-28311-1 SEA (Wash. Super. Ct.) (the "Underlying Lawsuit"). On January 15, 2025, Ms. Jaguar filed the Second Amended Complaint ("SAC"), Dkt. Nos. 31-2, 34-1 (identical copy filed by Defendant), alleging that Mr. Nieder committed several tortious acts against Ms. Jaguar, including:

- On or about February 6, 2022, Mr. Nieder "scratched" Ms. Jaguar and "forcibly removed their son from her arms," Dkt. No. 31-2 ¶ II.a.;
- On or about April 14, 2022, Mr. Nieder "restrained" Ms. Jaguar, "grabbed her neck, [and] pushed her against a wall," *id.* ¶ II.b.;
- On or about December 10, 2022, Mr. Nieder "threw [Ms. Jaguar] to the floor" and "sat on top of her body to restrain it," *id.* ¶ II.c.;

[1] The parties agree that there is no genuine dispute of material fact. *See* Opp. at 2 n.1 ("Mr. Nieder does not dispute the facts material to the Motion … and acknowledges that this matter is ripe for summary judgment."), 9–10 ("Mr. Nieder does not dispute the accuracy of the Policy and Umbrella Policy language as quoted in Encompass's motion for summary judgment, nor does Mr. Nieder dispute that the second amended complaint makes the allegations broadly described in [the Motion].").

[2] The record contains only the policy form in effect during the initial policy period. However, neither party contends that the renewal policy contains materially different terms, and both parties have briefed this dispute under the copy of the Policy and Umbrella Policy provided. *See* Dkt. No. 32-1.

- On or about December 16, 2022, Mr. Nieder "grabbed [Ms. Jaguar] by the neck, pushed her down, restrained her on their bed, [and] damaged her earrings as he was restraining her," *id.* ¶ II.d.; and

- On or about December 29, 2022, Mr. Nieder "grabbed [Ms. Jaguar] by the neck and pinned her down on a couch while attempting to strangle her for a prolonged period of time," *id.* ¶ II.e.

In the Underlying Lawsuit, Ms. Jaguar brings tort claims against Mr. Nieder, including assault, battery, domestic violence, false imprisonment, negligent and intentional infliction of emotional distress, outrage, and "common law negligent acts," "causing physical harm, emotional harm, and other significant injuries to her person." *Id.* ¶¶ III.a.–c.

On April 3, 2025, Encompass agreed to provide Mr. Nieder with a defense to Ms. Jaguar's claims under a reservation of rights. Dkt. No. 32-2.

### B. The Policy[3]

The Policy's "Personal Liability—Insuring Agreement" section provides that Encompass will pay legal defense costs for the insured under the following circumstances:

> If a claim or suit is brought against any **covered person** for the following:
>
> 1. **Personal Injury**
> 2. **Bodily Injury**; or
> 3. **Property Damage**
>
> caused by an **occurrence** to which this coverage applies, **we** will:
>
> 1. Pay on **your** behalf claims for which any **covered person** are legally liable … up to **our** limit of liability; except as excluded by the provisions listed in the **Liability Coverage—Losses We Do Not Cover**; …

Dkt. No. 32-1 at 67–68.

The Policy also defines the following relevant terms:

> 2. **Bodily Injury** means physical bodily harm, including sickness or disease except any sickness or disease that arises from the

[3] The Policy incorporates several endorsements and amendments modifying its terms. *See* Dkt. No. 32-1. The Court sets out the provisions of the Policy and Umbrella Policy relevant to the parties' dispute, as briefed by the parties.

transmission of a communicable disease or sickness of any type which is transmitted from person to person by direct contact with an affected **covered person** or the **covered person's** discharges. **Bodily Injury** includes required care, loss of services and death resulting therefrom.

…

4. **Covered Person(s)** means **you** and the following residents of **your** household:

   a. **Your family members**; and

…

5. **Family Member** means a person who is a resident of **your** household and related to **you** by blood, marriage, adoption, domestic partnership or civil union as recognized by the state in which this policy was issued.

…

9. **Occurrence** means:

   a. An accident, including continuous or repeated exposure to substantially the same general harmful conditions during the policy period, resulting in **bodily injury** or **property damage**. All losses arising out of such continuous or repeated exposure shall be deemed to arise out of one accident; or

   b. An offense, including a series of related offenses, committed during the policy period, resulting in **personal injury**. All losses arising out of such offenses or series of offenses shall be deemed to arise out of one offense.

…

10. **Personal Injury** means injury arising out of one or more of the following offenses: libel, slander, false arrest, wrongful eviction, wrongful detention, wrongful entry, malicious prosecution, false imprisonment, invasion of privacy or defamation of character.

*Id.* at 55–56, 79, 81.

The Policy's "Losses We Do Not Cover" section contains the following exclusions from coverage that are relevant to this action:

1. **Liability Coverage—Personal Liability** and **Liability Coverage—Medical Expenses** coverages do not apply to **bodily injury** or **property damage**:

…

h. Intended by, or which may reasonably be expected to result from, the intentional or criminal acts or omissions of one or more **covered persons**. This exclusion applies even if:

(1) Such **covered person** lacks the mental capacity to govern his or her conduct;

(2) Such **bodily injury** or **property damage** is of a different kind or degree than that intended or reasonably expected; or

(3) Such **bodily injury** or **property damage** is sustained by a different person than intended or reasonably expected.

This exclusion applies regardless of whether or not such **covered person** is actually charged with or convicted of a crime.

…

o. Arising out of sexual molestation, corporal punishment, or physical or mental abuse.

…

2. **Liability Coverage—Personal Liability** does not apply to:

…

g. **Bodily injury** to any **covered person**. …

…

4. **Personal Injury** does not apply to:

a. Injury caused by a violation of a law or ordinance by, or with the knowledge or the expressed or implied consent of a **covered person**;

…

f. Injury to **you** or a **family member**.

*Id.* at 70–73.

**C. The Umbrella Policy**

The "Personal Umbrella Coverage Endorsement—Washington" section, or the Umbrella Policy, provides the following coverages in consideration of an additional premium:

> **Coverages**
>
> 1. **Insuring Agreement**
>
> **We** will pay damages, in excess of the Minimum Retained Limit shown on the Coverage Summary, for which a **covered person** becomes legally liable due to an **occurrence** resulting in:
>
> a. **Bodily injury** or **property damage** to which this insurance applies; and
>
> b. **Personal injury** due to one or more offenses listed under the definition of **personal injury**;
>
> up to the limit of liability shown on the Coverage Summary for Personal Umbrella Coverage.
>
> Any payment is subject to the **minimum retained limit**, the exclusions listed in the section **Losses We Do Not Cover** and the other provisions of this endorsement.

*Id.* at 90.

As for definitions, the Umbrella Policy adopts meanings materially similar to those in the Policy for the following terms: "bodily injury," "covered person(s)," "family member," "occurrence," and "personal injury." *Id.* at 88–89. In addition, the following definitions are relevant to the Umbrella Policy:

> 8. **Minimum Retained Limit** means the greater of:
>
> a. The total limits of any **underlying insurance** and other insurance that applies to the **occurrence** that:
>
> (1) Are available to a **covered person**;
>
> (2) Would have been available had the **covered person** fully complied with the terms and conditions of the **underlying policy**;
>
> …

> b. The Minimum Retained Limit amount shown on the Coverage Summary
>
> …
>
> 17. **Underlying policy** or **underlying insurance** means any policy providing the **covered person** primary liability insurance.

*Id.* at 89.

As for exclusions, the Umbrella Policy's "Losses We Do Not Cover" section states that Encompass "do[es] not provide any coverage under this endorsement for" exclusions materially parallel to those in the Policy, *see id.* at 91–94, with one noteworthy difference: The Umbrella Policy excludes "[l]iability arising out of sexual molestation, corporal punishment or physical or mental abuse," without the Policy's limitation to "bodily injury or property damage." *Compare id.* at 70–72, *with* 94.

### D. Procedural History

On April 15, 2025, Encompass filed this action against both named insureds, Mr. Nieder and Ms. Jaguar, seeking a declaratory judgment that it has no duty to defend or indemnify Mr. Nieder in the Underlying Lawsuit. Dkt. No. 1. By late July 2025, both Mr. Nieder and Ms. Jaguar had filed their Answers. Dkt. Nos. 15, 21. On December 22, 2025, Encompass moved for summary judgment. Dkt. No. 30. Mr. Nieder opposed the Motion, Dkt. No. 33 ("Opposition"), but Ms. Jaguar did not file a response. Encompass then filed its reply in support of the Motion, Dkt. No. 38 ("Reply"). While the Motion was pending, the parties filed a Stipulated Motion to Continue Trial Date and Amend Case Schedule. Dkt. No. 43.

## III. LEGAL STANDARD

### A. Summary Judgment Standard

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving

party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the non-moving party's case. *Celotex Corp.*, 477 U.S. at 325. If the moving party meets the initial burden, the opposing party must set forth specific facts showing that there is a genuine issue of fact for trial in order to defeat the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000).

In insurance coverage cases, summary judgment is warranted when "(1) there is no dispute about the facts, and (2) coverage depends solely on the language of the insurance policy." *Stouffer & Knight v. Cont'l Cas. Co.*, 982 P.2d 105, 109 (Wash. Ct. App. 1999).

**B. An Insurer's Duty to Defend and Indemnify**

Under Washington law, the interpretation of an insurance policy is a question of law. *Overton v. Consol. Ins. Co.*, 38 P.3d 322, 325 (Wash. 2002). Courts give policy language its plain meaning, construing the policy as would an "average" person purchasing insurance. *Woo v. Fireman's Fund Ins. Co.*, 164 P.3d 454, 459 (Wash. 2007). The entire contract is construed together so as to give force and effect to each clause, and the policy is given "a practical and reasonable interpretation" rather than "a strained or forced construction that leads to an absurd conclusion." *Wash. Pub. Util. Districts' Utils. Sys. v. Pub. Util. Dist. No. 1 of Clallam County ("Washington Pub.")*, 771 P.2d 701, 707 (Wash. 1989). If a clause is "fairly susceptible to two different interpretations, both of which are reasonable," it is ambiguous, *Quadrant Corp. v. Am. States Ins. Co.*, 110 P.3d 733, 737 (Wash. 2005), and ambiguity is interpreted in favor of the insured, *Am. Best Food, Inc. v. Alea London, Ltd.*, 229 P.3d 693, 699 (Wash. 2010).

There are two steps to determining whether coverage exists: First, "[t]he insured must show the loss falls within the scope of the policy's insured losses." *McDonald v. State Farm Fire and Cas. Co.*, 837 P.2d 1000, 1003 (Wash. 1992). Then, "[t]o avoid coverage, the insurer must … show the loss is excluded by specific policy language." *Id.* at 1004. While an exclusionary clause is "strictly construed against the insurer," its meaning "must be determined in view of the policy as a whole." *Allstate Ins. Co. v. Calkins,* 793 P.2d 452, 454 (Wash. Ct. App. 1990).

Under Washington law, the duty to defend is broader than the duty to indemnify. *Woo*, 164 P.3d at 459. An insurer has a duty to indemnify if the policy "actually covers" the insured's liability, while the duty to defend arises if the policy "conceivably covers" the claims against the insured. *Am. Best Food*, 229 P.3d at 696. "Only if the alleged claim is clearly not covered by the policy is the insurer relieved of its duty to defend." *Truck Ins. Exch. v. VanPort Homes, Inc.*, 58 P.3d 276, 281–82 (Wash. 2002). In a declaratory judgment action, that duty is generally determined from the "eight corners" of the insurance contract and the underlying complaint. *Expedia, Inc. v. Steadfast Ins. Co.*, 329 P.3d 59, 64–65 (Wash. 2014). The question is whether "there is any reasonable interpretation of the facts or the law that could result in coverage." *Am. Best Food*, 229 P.3d at 696. "[I]f the claim is potentially within the coverage of the policy," the insurer must defend it. *W. Nat'l Assurance Co. v. Hecker*, 719 P.2d 954, 957 (Wash. Ct. App. 1986). "After obtaining a declaration of noncoverage, an insurer will not be obligated to pay from that point forward." *Nat'l Sur. Corp. v. Immunex Corp.*, 297 P.3d 688, 694 (Wash. 2013) (internal quotations omitted).

## IV. DISCUSSION

### A. The Underlying Lawsuit Alleges an "Occurrence" Only as to the Personal Injury Claim

Encompass argues that it has no duty to defend Mr. Nieder in the Underlying Lawsuit because there has been no "occurrence" under the insurance policies. Mot. at 14–

16. For the following reasons, the Court disagrees as to Ms. Jaguar's personal injury claims.

The Policy insures claims for "bodily injury" or "personal injury" only if such bodily or personal injury was "caused by an occurrence to which this coverage applies." Dkt. No. 32-1 at 67–68. "Occurrence" is defined in two subparts as "(a) [a]n accident … resulting in bodily injury …," and "(b) [a]n offense, including a series of related offenses, committed during the policy period, resulting in personal injury." *Id.* at 56. Thus, subpart (a) governs claims for "bodily injury"; subpart (b) governs claims for "personal injury."

**1. The Bodily Injury Claims Do Not Involve an "Occurrence"**

The Policy does not define "accident," so the term "must be given its popular and ordinary meaning." *Hecker*, 719 P.2d at 958. "For insurance coverage … 'an accident' is an unusual, unexpected, and unforeseen happening." *Grange Ins. Co. v. Brosseau*, 776 P.2d 123, 125 (Wash. 1989). As the Washington Supreme Court has stated:

> an accident is never present when a deliberate act is performed unless some additional unexpected, independent and unforeseen happening occurs which produces or brings about the result of injury or death. The means as well as the result must be unforeseen, involuntary, unexpected and unusual.

*Safeco Ins. Co. of Am. v. Butler*, 823 P.2d 499, 509 (Wash. 1992) (quoting *Detweiler v. J.C. Penney Cas. Ins. Co.*, 751 P.2d 282, 284 (Wash. 1988)). Furthermore, whether an "accident" happened is not a subjective inquiry; that is, "the perspective of the insured as opposed to the tortfeasor is not a relevant inquiry. Either an incident is an accident or it is not." *Roller v. Stonewall Ins. Co.*, 801 P.2d 207, 210 (Wash. 1990).

Here, the SAC in the Underlying Lawsuit alleges that Mr. Nieder scratched Ms. Jaguar, restrained her, grabbed her neck, pushed her against a wall, threw her on the floor, sat on her, and attempted to strangle her. Dkt. No. 31-2 ¶¶ II.a.–e. Each act alleged is deliberate, and the SAC does not identify any independent or unforeseen happening that produced her injuries. Moreover, where "an act [is] of such a character" that physical harm

is foreseeable, an "intent to cause injury can be inferred *as a matter of law*." *Hecker*, 719 P.2d at 960 (emphasis in original). The acts that the SAC describes are such acts.

In response, Mr. Nieder contends that the SAC's claims for negligent infliction of emotional distress and "other common law negligent acts," Dkt. No. 31-2 ¶¶ III.b.–c., are "conceivably occurrences under the [P]olicy for which coverage is available." Opp. at 11–12. But Encompass' duty to defend turns on whether the complaint "alleges facts which could, if proven, impose liability upon the insured within the policy's coverage." *VanPort Homes,* 58 P.3d at 282. Through subpart (a), the Policy limits coverage to a category of conduct—accidents—not a category of claims. Therefore, a negligence-based theory or cause of action satisfies subpart (a) only if the facts alleged describe something other than a deliberate act. *See Safeco Ins. Co. of Am. v. Wolk*, 342 F. Supp. 3d 1104, 1110–11 (W.D. Wash. 2018) (finding claims arising out of deliberate abuse were not a covered occurrence "even if they are couched in negligence"). Here, the SAC's factual allegations appear entirely in paragraphs II.a. through II.f., Dkt. No. 31-2 at 3, and each describes a violent deliberate act. The negligence-based causes of action, *id.* ¶¶ III.b.–c., rely on those factual allegations and identify no separate conduct, no unintended act, and no accidental means.

Accordingly, the Underlying Lawsuit does not involve an "occurrence" as defined by subpart (a) of the Policy. Because the Umbrella Policy defines "occurrence" identically to the Policy, Dkt. No. 32-1 at 89–90, the same result follows.

**2. The Personal Injury Claim Does Involve an "Occurrence"**

In contrast, an "occurrence" as defined under subpart (b) is an "offense … committed during the policy period, resulting in personal injury." Dkt. No. 32-1 at 56. The Policy defines "Personal Injury" as "injury arising out of one or more" enumerated offenses, including "false imprisonment." *Id.* In the Underlying Lawsuit, Ms. Jaguar pleads a false imprisonment claim against Mr. Nieder, alleging that he "restrained" her during several incidents in April and December 2022. Dkt. Nos. 31-2 ¶¶ II.a.–e., 34-1 ¶¶ II.a.–e.

Encompass argues that an enumerated personal-injury offense, such as false imprisonment, is an "occurrence" under the Policy "only if it is not the product of intentional, excluded conduct." Dkt. No. 38 at 4. Encompass cites the exclusion for intentionally caused injury for that proposition, *see* Reply at 4, but that exclusion applies only to claims for bodily injury or property damage, not to personal-injury claims. Dkt. No. 32-1 at 70–71. Moreover, the offenses enumerated in the Policy's "Personal Injury" definition—*e.g.,* false imprisonment, false arrest, malicious prosecution—are ordinarily intentional torts, so requiring there to be a non-deliberate act would render subpart (b) illusory. Encompass' proposed interpretation of the Policy is thus a "strained or forced construction that leads to an absurd conclusion," which the Court rejects. *See Washington Pub.,* 771 P.2d at 707. Rather, upon review of the Policy's terms, the Court finds that Ms. Jaguar's false imprisonment claim constitutes a covered "occurrence" under subpart (b). However, whether that claim is nevertheless excluded is a separate question, and the Court next turns to the Policy's exclusions.

**B. The Policy's Exclusions Bar Every Claim in the Underlying Lawsuit**

Encompass argues that even if the Policy's insuring agreement was triggered by the Underlying Lawsuit, it has no duty to defend Mr. Nieder based on several applicable exclusions. Mot. at 17–23. For the following reasons, the Court agrees.

**1. Three Exclusions Apply to the Bodily Injury Claims**

The Court concludes that the Underlying Lawsuit does not involve an "occurrence" under subpart (a). But even if it did, three exclusions would independently preclude coverage for Mr. Nieder against Ms. Jaguar's bodily injury claims:

**a. Expected or Intended Injury**

First, the Policy excludes coverage for "bodily injury" that was "[i]ntended by, or which may reasonably be expected to result from, the intentional or criminal acts or omissions of one or more covered persons." Dkt. No. 32-1 at 71. "This exclusion applies even if … [s]uch bodily injury … is of a different kind or degree than that intended or

reasonably expected," and "regardless of whether or not such covered person is actually charged with or convicted of a crime." *Id.* Where "[t]he character of the act is such that physical as well as mental trauma can be foreseen as accompanying it," "an intent to cause injury can be inferred *as a matter of law*." *Hecker*, 719 P.2d at 960 (emphasis in original).

In *New York Underwriters Ins. Co. v. Doty*, the insured abducted his former wife and over the course of two days subjected her to "unlawful restraints … physical attacks and beatings" that "terrorized [her] physically and mentally." 794 P.2d 521, 522–23 (Wash. Ct. App. 1990). The court inferred an intent to harm "from the nature of his physical assaults," which placed the "personal injury claim outside the scope of Doty's homeowners policy." *Id.* at 525–26 (applying the reasoning in *Hecker*). The alleged acts here are of the same character. Grabbing a person by the neck, throwing her to the floor, sitting on her to restrain her, and attempting to strangle her are acts from which both an intent to injure can be inferred and physical and emotional trauma would be the foreseeable result. Accordingly, Ms. Jaguar's bodily injury claims in the Underlying Lawsuit are excluded from coverage.

**b. Bodily Injury to a Covered Person**

Second, the Policy excludes coverage for "[b]odily injury to any covered person." Dkt. No. 32-1 at 72. The Policy was issued to both "Daniel Nieder and Victoria Jaguar" as the Policyholder/Named Insured at a single residential address, *id.* at 8, and Encompass issued the Policy to their "marital community," Dkt. No. 32 ¶ 2. Thus, Ms. Jaguar is a covered person under the Policy, which Mr. Nieder does not dispute. *See* Opp. at 14. Thus, this exclusion applies, and Ms. Jaguar's bodily injury claims in the Underlying Lawsuit are excluded from coverage.

**c. Physical or Mental Abuse**

Third, the Policy excludes coverage for "bodily injury" "[a]rising out of sexual molestation, corporal punishment, or physical or mental abuse." Dkt. No. 32-1 at 70-73. "Arising out of" in insurance policies is construed broadly; it "has a broader meaning than

'caused by' or 'resulted from'" and "ordinarily means 'originating from,' 'having its origin in,' 'growing out of,' or 'flowing from.'" *Munn v. Mut. of Enumclaw Ins. Co.*, 869 P.2d 99, 101 (Wash. Ct. App. 1994). It "does not mean 'proximately caused by.'" *Id.* Every bodily injury Ms. Jaguar alleges in the Underlying Lawsuit flows from the physical abuse described in the SAC. Thus, this exclusion also applies, and Ms. Jaguar's bodily injury claims in the Underlying Lawsuit are excluded from coverage.

**2. Another Exclusion Applies to the Personal Injury Claim**

The Policy's coverage for personal injury claims is subject to its own exclusions. Specifically, the Policy states that "Personal Injury does not apply to … Injury to you or a family member." Dkt. No. 32-1 at 73.

That exclusion applies to Ms. Jaguar's false imprisonment claim in the Underlying Lawsuit. Ms. Jaguar is named as a Policyholder and Named Insured on the Policy and is therefore "you" under the Policy. *Id.* at 8. She is also a "family member," which is defined as a person "who is a resident of your household and related to you by blood, marriage, adoption, domestic partnership or civil union," and who was "actually residing in your household on the date the loss occurred." *Id.* at 55, 79. Encompass issued the Policy to Mr. Nieder and Ms. Jaguar as a "marital community" at a single residence. Dkt. Nos. 32 ¶ 2, 32-1 at 8. Neither Encompass nor Mr. Nieder contends otherwise. As a result, though false imprisonment is one of the enumerated claims under the definition of "Personal Injury," this exclusion applies and Ms. Jaguar's personal injury claim in the Underlying Lawsuit is excluded from coverage.

Because that claim is excluded, no claim in the Underlying Lawsuit is conceivably covered by the Policy. Therefore, Encompass owes Mr. Nieder no duty to defend under the Policy.[4] *State Farm Gen. Ins. Co. v. Emerson*, 687 P.2d 1139, 1145 (Wash. 1984)

[4] Mr. Nieder pleaded waiver and estoppel as affirmative defenses. Dkt. No. 15 at 15. He does not raise either in the Opposition, and he offers no facts that would support them. The Court therefore does not address them.

(holding that "alleged claims which are not clearly covered by the policy, relieve the insurer of its right and duty to defend").

**C. The Umbrella Policy Also Does Not Provide Coverage**

Encompass also contends that no coverage exists under the Umbrella Policy because its terms and applicable exclusions also do not provide Mr. Nieder with coverage for the claims asserted in the Underlying Lawsuit. Mot. at 17–23. The Court agrees for several reasons:

*First*, the Umbrella Policy's definition of "occurrence" is materially identical to the Policy's definition, so coverage for the bodily injury claims fails for the reasons explained in Section IV.A.1. *supra*. *Second*, the Umbrella Policy's exclusions, *see* Dkt. No. 32-1 at 91–94, independently bar every claim in the Underlying Lawsuit: it excludes (i) claims for bodily injury intended by, or reasonably expected to result from, a covered person's intentional or criminal acts; (ii) claims for bodily injury to any covered person; (iii) any personal injury "[t]o you or a family member"; and (iv) "Personal Injury" to a covered person. *See supra* Section IV.B. (discussing why materially similar exclusions in the Policy apply to the claims in the Underlying Lawsuit). And *third*, the Umbrella Policy, in terms broader than the Policy's analogous provision, excludes "[l]iability arising out of sexual molestation, corporal punishment or physical or mental abuse," without the Policy's limitation to "bodily injury or property damage." *Compare* Dkt. No. 32-1 at 72, *with id.* at 94. As every bodily injury Ms. Jaguar alleges in the Underlying Lawsuit flows from the physical abuse described in the SAC, this exclusion would independently apply to preclude coverage for her claims under the Umbrella Policy.

**D. Encompass Has No Duty to Indemnify**

In addition to whether a duty to defend exists, Encompass seeks a declaratory judgment that it also has no duty to indemnify Mr. Nieder for the claims in the Underlying Lawsuit. Mot. at 13–14, 23. Under Washington law, the duty to defend and the duty to indemnify are separate obligations, with the duty to defend being broader. *New Hampshire*

*Indem. Co. v. Budget Rent-A-Car Sys., Inc.*, 64 P.3d 1239, 1243 (Wash. 2003). Unlike the duty to defend, which is triggered if the policy "conceivably covers" the allegations in the underlying complaint, the duty to indemnify arises only if the policy "actually covers" the insured's liability. *St. Paul Fire & Marine Ins. Co. v. Highline Sch. Dist. No. 401*, No. C17-1917 TSZ, 2018 WL 4205019, at *1 (W.D. Wash. Sept. 4, 2018). The duty to indemnify "hinges on the insured's actual liability to the claimant and actual coverage under the policy." *Indian Harbor Ins. Co. v. City of Tacoma, Wash. Dep't of Pub. Utilities*, 354 F. Supp. 3d 1204, 1215 (W.D. Wash. 2018).

As a result, some courts defer the indemnity question until liability in the underlying action is resolved. The Court finds that unnecessary here. Deferral may be sensible where coverage depends on facts that the underlying action has yet to establish—for example, where a complaint pleads both covered and uncovered theories and only a verdict will reveal which theories are successful. That is not this case. Here, several exclusions that altogether preclude coverage of all claims in the Underlying Lawsuit turn on *who* was allegedly injured—Ms. Jaguar, a named insured, "covered person," and "family member"—not on what facts are ultimately found. Thus, no judgment that could be entered against Mr. Nieder in the Underlying Lawsuit on those claims could give rise to a duty to indemnify. Courts in this district have resolved both duties together in this posture. *See Safeco Ins. Co. of Am. v. Wolk*, 342 F. Supp. 3d 1104, 1111–12 (W.D. Wash. 2018) (granting summary judgment declaring no obligation to defend or indemnify while the underlying state court action remained pending); *Allstate Indem. Co. v. Pacheco*, No. 3:14-cv-05366-KLS, 2015 WL 164091, at *6 (W.D. Wash. Jan. 12, 2015).

Accordingly, the Court concludes that Encompass does not owe Mr. Nieder a duty to indemnify with respect to the Underlying Lawsuit.

//

//

//

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiff's Motion for Summary Judgment, Dkt. No. 30. Encompass has no duty to defend or indemnify Mr. Nieder with respect to Ms. Jaguar's claims against him in the Second Amended Complaint in the Underlying Lawsuit.

Dated this 29th day of September, 2026.

The Honorable Richard A. Jones
United States District Judge